JOSHUA R. STANFORD, PLAINTIFF IN ERROR, *v.* CLAY TAYLOR.

Where an imperfect Spanish title to land in Missouri was confirmed by the commissioners, but the claim required a survey to ascertain its limits and boundaries,

evidence cannot be received that the survey was erroneously made, by showing possession, by the confirmee, of land in a different place than that where the survey placed his land.

THIS case was brought up, by writ of error, from the circuit court of the United States for the district of Missouri.

The case is stated in the opinion of the court.

It was argued by *Mr. Lawrence* and *Mr. Johnson,* for the plaintiff in error, and by *Mr. Williams,* for the defendant.

*Mr Lawrence* made the following points, namely : —

This survey was entirely erroneous, as plaintiff claims and offered to show, for reasons ;

1. That the location was such that it did not include the possession as required by the commissioners' certificate.

2. It did not adjoin Robert in any way, but was put three arpens west of it.

3. It was made upon the grant to Mad. Papin, long before surveyed and patented to her representatives, and held by them.

4. It was in violation of the instructions of the surveyor-general.

This survey was, therefore, void in every respect that could affect the plaintiff's rights under the confirmation. A survey, if necessary at all, is not final or unalterable. If wrong, it may (most certainly should) be corrected by the courts.

Kittridge *v.* Landry, 2 Rob., Lou. 72; Latiolais *v.* Richard, 6 Mar. Lou. (N. S.) 213; Fay *v.* Chambers, 4 Lou. An. R. 481.

It may be conceded that a survey by a government officer, made in a case of a confirmation for land, of which there had been no possession, and which is undefined and floating, should possess something of the nature of conclusiveness. But where there has been possession, and that possession is shown, and the land confirmed is for a definite location " conformable " to that possession, no act of survey ought to affect the rights of the confirmee. To say that it could, would be to place every man's titles at the mercy of an executive officer.

The act of surveying is merely ministerial in its character, and if performed in open violation of facts and law—as it was in this case—it goes for naught, and should be disregarded entirely.

The true effect and force of a survey is properly declared in the fourth instruction of circuit court of Missouri, in the case of West *v.* Cochran, when it is stated to be *prima facie* evidence of its conformity to the confirmation. The strong reason why this should be its only effect is, that it is made the duty of government to survey the lands of a confirmee, and to so survey it

that it shall agree with the decision of the board.   The land surveyed should be the same as that possessed originally.

The survey is intended only as an official designation of the land confirmed, for the purpose of obtaining patent evidence of title.   When it violates the description in the concession, and is at variance with the decision of the commissioners, it is no survey; and the courts should at once proceed to correct that which the executive department has done under mistake, and in violation of a right confirmed by law.   This case differs from that of West *v.* Cochran, 17 How. 403.

In that case, it is shown by the record, that Brazeau (through whom the plaintiff claimed) had never been in possession of the ground claimed by him.   Nor had he, or any assignee or representative of his, ever had proper registry of the claim; nor did any one come before the board of commissioners as a claimant under the act of 1807.

The proofs and offers of proofs by plaintiff made out a good *primâ facie* case in ejectment.

Defendant showed no title in himself, and plaintiff ought to have been allowed to show the erroneous character of the surveys produced by the defendant.   9 Pet. 171; 10 Ib. 326, 340; United States *v.* Levy, 13 Pet. 83; 15 Ib. 172; 16 Ib. 146, 228; 8 How. 295; 10 Ib. 541; 11 Ib. 115.

Mr. Justice CATRON delivered the opinion of the court.

The plaintiff, Stanford, sued Taylor in ejectment, claiming title to the land in dispute under a concession from " Don Francisco Cruzat, lieutenant-governor, dated in 1785, who decreed as follows:—

" In view of what is set forth in the present memorial, presented by Angela Chovin, widow of the deceased Miguel Bolica, of this town of St. Louis, under date of the sixth of May of the current year, I have granted to her, in proprietary title, for her, her heirs, and others who may represent her right, forty arpens front of land upon forty in depth, along the river called *De los Padres,* (Des Pères,) from the north to the south, which is bounded on the one side by the lands of Louis Robert, and on the other by the domain of the king," &c.

This claim was confirmed in general terms to Jean F. Perry, as assignee, by the board of commissioners sitting at St. Louis, in 1811, for 1,600 arpens, " situate in the district of St. Louis, on the River Des Pères," and ordered to be surveyed " conformably to the possession, by virtue of a concession, or order of survey, from Francis Cruzat, lieutenant-general."

The plaintiff derives title under Perry.

The survey directed to be made by the board of commis-

sioners was not executed till 1834, when the surveyor-general ordered the land to be located west of Louis Robert's tract, and on both sides of the River Des Pères. But the plaintiff insists that the land granted and confirmed adjoins Robert's tract on the east, and that the location is so plainly apparent on the face of the concession as not to require a survey; and, furthermore, he offered to show by proof that the possession of Perry, the confirmee, was part of a tract of land east of the tract of Louis Robert, of seven by forty arpens, and adjoining it; and, if located there, would include the premises in controversy. The court rejected the evidence offered, and permitted the defendant to give in evidence the official survey of the tract of 1,600 arpens; to overcome the effect of which, the plaintiff offered to prove that the official survey was improperly made west of Robert's tract, and not adjoining it; whereas it should have been made east of the same. This evidence was also rejected, when the court instructed the jury as follows: " The parties agreeing that the official survey of confirmation, under which the plaintiff claims the land in dispute, does not include the premises sued for, the jury ought to find for the defendant."

To the rejection of the parol evidence, and to the charge of the court, the plaintiff excepted.

The law is settled, that where there is a specific tract of land confirmed, according to ascertained boundaries, the confirmee takes a title on which he may sue in ejectment. The case of Bissell v. Penrose, 8 How. 317, lays down the true rule.

But where the claim has no certain limits, and the judgment of confirmation carries along with it the condition that the land shall be surveyed, and severed from the public domain and the lands of others, then it is not open to controversy, that the title attaches to no land; nor has a court of justice any authority in law to ascertain and establish its boundaries, this being reserved to the executive department. The case of West v. Cochran, 17 How. 403, need only be referred to as settling this point. And the question here is, whether the concession to Perry is indefinite and vague, and subject to be located at different places.

It is to be forty by forty arpens in extent; it is to lie along the River Des Pères, from the north to the south; and to be bounded on the one side by the lands of Louis Robert, and on the other by the domain of the king. On which side of Robert's land it is to lie, we are not informed, further than that it is to lie along the river from north to south. The record shows, that if surveyed west of Robert's tract, the forty by forty arpens includes the River Des Pères; but, if surveyed east of Robert's land, it will not include the river. The uncertainty of out-

boundary in this instance is too manifest, in our opinion, to require discussion to show that a public survey is required to attach the concession to any land.